### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### HELENA DIVISION

LAVERN ROSS                                                                    PLAINTIFF

v.                                    No. 2:07CV00116 JLH

ADVANCE AMERICA CASH ADVANCE
CENTERS, INC. d/b/a ADVANCE AMERICA;
ADVANCE AMERICA CASH ADVANCE
CENTERS OF ARKANSAS, INC. d/b/a ADVANCE
AMERICA d/b/a ADVANCE AMERICA CASH
ADVANCE CENTERS; and ADVANCE AMERICA
SERVICING OF ARKANSAS, INC.                                                    DEFENDANTS

### OPINION AND ORDER

Lavern Ross brings this action against Advance America Cash Advance Centers, Inc., and

related companies (collectively "Advance America") pursuant to the Americans With Disabilities

Act of 1990, 42 U.S.C. §§ 12101 *et seq*., Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000(e) *et seq*., the Arkansas Civil Rights Act of 1993, Ark. Code Ann. §§ 16-123-101 *et seq*.,

42 U.S.C. § 1981(a), and the common law of the State of Arkansas.  Advance America has filed a

motion for summary judgment, to which Ross has responded.  For the reasons stated hereinafter,

Advance America's motion for summary judgment is granted.

### I.

A court should enter summary judgment when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).  A

genuine issue exists only if there is sufficient evidence to allow a jury to return a verdict for the

nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences.  *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Ross was employed by Advance America from August 6, 2001, through February 28, 2006, when she was discharged.  Except for an initial period of training, her primary assignment throughout her employment was as Center Manager for the Advance America center in Blytheville, Arkansas.  For the most part she had a good employment record with Advance America.  She was disciplined shortly after her employment began because her cash drawer was short.  Three years later she was disciplined because a customer complained that she was rude, but she disputes the accuracy of the customer's accusations.  When the issue with the customer arose, she took medical leave. When she returned from medical leave, she received a written warning memorializing the customer complaint and her response to it.

Ross has bipolar disorder, a fact that she disclosed to Dunn, who discussed her diagnosis with another employee.  Dunn admitted that he discussed Ross's diagnosis with another employee and admitted that he was wrong in doing so.  It is undisputed that Dunn violated company policy when he discussed Ross's diagnosis with another employee.  Although the record does not disclose the

exact date of Dunn's inappropriate disclosure, the date must have been before April 5, 2005, because Ross made reference to it in responding to an employee performance evaluation on that date.

Ross complained to corporate headquarters about Dunn's disclosure of her diagnosis on several occasions, but Dunn was never disciplined.  According to Dunn, he admitted that he had erred, and he apologized to Ross.  Ross testified that Dunn admitted what he had done and admitted that it was wrong, but she says that he never apologized.

In late July of 2005, Ross took eight weeks of medical leave for a surgical procedure.  While she was on medical leave, on August 9, 2005, she called a hotline maintained by the employee relations department at Advance America's corporate headquarters in South Carolina, and she complained about Dunn's disclosure.  At that point, the employee relations department contacted Dennis Fischer, who was the regional director of operations for Michigan and Arkansas and in that capacity was Dunn's supervisor.  Fischer spoke with Dunn, who admitted his wrongdoing and said that he had apologized.  Fischer told Dunn to make sure that it did not happen again.  Fischer then spoke with Renee Wrencher and Tamara Thompson, the other two employees in the Blytheville center, and they said that Ross talked openly about her diagnosis.  Ross denies that she talked with Wrencher and Thompson about her diagnosis, but the undisputed evidence shows that they made that statement to Fischer, whether it was true or not.

In November 2005, the assistant manager at the Blytheville center, Renee Wrencher, called the employee relations department and complained that Ross was "trying to set her up."  A note with the record of this call says, "They are both blaming each other for everything going wrong."

In December 2005, Ross again called the employee relations department to complain about the incident in which Dunn had disclosed her condition and was dissatisfied that no action had been

taken to discipline Dunn.  Ross called the employee relations department to inquire about the status of her complaint twice in December 2005 and once in February 2006.

On February 15, 2006, Tamara Thompson called Dunn and said that Ross had advanced a customer who was not working.  Dunn called Wrencher to verify what Thompson had said. Wrencher told Dunn that Ross had said that she was going to get him "nailed to the cross."  The employee relations' note says that Thompson also heard Ross make that comment.  Eight days later, the following note was made in the employee relations' file:

> **Update 2/23/2006:** Jennifer Rodriguez has asked Dennis to go to Arkansas and deal with Lavern.  Dennis called to get an update of the situation with her.  Her performance is poor but we haven't addressed it b/c no one has been able to address her complaints against Larry.  We advised Dennis to handle Lavern's initial complaint against Larry and then address Lavern's behavior issues.

Fischer traveled from Michigan to Blytheville to meet with Ross on February 28, 2006, and he arranged for a regional director from Texas, Earl Randolph, also to attend.  The three of them met at a restaurant in Blytheville.  Fischer told Ross that Dunn had apologized for disclosing her diagnosis and said, "What more do you want?  He's apologized and we need to move on."  Then Fischer told Ross, "we need to talk about you."  Fischer read to Ross the following statement that he had prepared as the reason for the counseling session:

> Lavern has violated the Company's Performance Expectations as outlined on page 14 of the Employee Handbook by conducting herself in a manner that is defiant and disrespectful towards her supervisor and will not be tolerated.  There are incidents where Lavern has refused to speak with her supervisor.  Lavern has also made negative comments about her supervisor to fellow employees that impede a team environment.  Statements regarding these comments are on file.  Effective immediately, conversations that Lavern does not conduct herself in a professional manner may result in immediate dismissal.

Fischer then got a telephone call and left the table.  Ross says that she started having an anxiety

attack and told Randolph, who consoled her.  After a while, when Fischer had not returned, she told

Randolph that she was going to the bathroom and then she was leaving.[1]  She then returned to the

Advance America center in Blytheville.

Sometime later that day, Fischer and Randolph went to the center, excused the other

employees, and locked the door.  Fischer then told Ross that she had been insubordinate for leaving

when he had not excused her, and he terminated her employment.

On August 1, 2006, Ross filed a charge of discrimination with the Equal Employment

Opportunity Commission.  She checked the boxes to show that the alleged discrimination was based

on retaliation and "other."  In the space to describe her complaint more specifically, she wrote:

> My supervisor discussed my personal medical information with co-workers after I
> complained I was discharged from my position as Branch Manager.
>
> I believe I was retaliated against and my medical records discussed with co-workers
> by my supervisor, in violation of the Americans With Disabilities Act and Title VII
> of the Civil Rights Act of 1964, as amended.

The EEOC issued its notice of right to sue on June 19, 2007.  Ross commenced this action on

August 31, 2007.

### III.

#### A.     ROSS'S FMLA CLAIM

Advance America first argues that Ross's FMLA claim fails as a matter of law because she

is not an eligible employee under the FMLA.  An employee who is employed at a work site at which

the employer employs less than 50 employees is not an eligible employee under FMLA if the total

---

[1] Randolph denies that she said she was leaving.  He testified that he expected her to
return to the table when she left the bathroom.

number of employees employed by that employer within 75 miles of that work site is less than 50. 29 U.S.C. § 2611(2)(B)(ii). The 75-mile distance is measured by surface miles, using surface transportation over public streets, roads, highways and waterways, by the shortest route from the facility where the employee needing leave is employed. 29 C.F.R. § 825.111(b). The parties stipulated that Advance America and its subsidiaries do not employ 50 employees within 75 surface miles as measured by the most direct highway distance to the Advance America center in Blytheville. Therefore, Ross is not an eligible employee under FMLA.

Ross argues, however, that Advance America is estopped from using the 75-mile rule, citing *Duty v. Norton Alcoa Proppants*, 293 F.3d 481 (8th Cir. 2004). In *Duty*, the Eighth Circuit held that an employer could be equitably estopped from asserting an affirmative defense that the employee had exhausted the twelve weeks of FMLA leave when the employer had sent the employee a letter guaranteeing the employee FMLA leave for a longer period of time and the employee reasonably relied on that letter to his detriment. *Id*. at 493-94. Equitable estoppel "declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny the representation." *Id*. (quoting *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir. 1992)).

Unlike the plaintiff in *Duty*, Ross has not presented evidence that her employer represented to her that her medical leave qualified under the FMLA. There is no doubt that Ross was given medical leave, and she has submitted an affidavit in which she says that she was told that it was "family medical leave," and that she believed that she had all the protections for "family medical leave." It is undisputed, however, that Advance America's human resource policies provide for medical leave even for employees who are not eligible under the Family Medical Leave Act. Ross

6

has not said either in her deposition or in her affidavit that anyone from Advance America told her that her leave qualified under the FMLA as distinct from the company's policy permitting medical leave for employees who were not eligible under FMLA.  It is undisputed that she was told that she could take medical leave, and it is undisputed that she took medical leave, but there is no evidence that she was told that she was an eligible employee under the Family Medical Leave Act. Consequently, there is no evidence to support an essential element of her claim of estoppel.

Even if the Court were to accept her argument on the estoppel issue, no reasonable jury could find that Ross was terminated for taking medical leave.  Ross took medical leave on two occasions, once in 2004 and once in 2005.  She argues that when she returned from medical leave in 2004, she received discipline for having been rude to a customer, and when she took medical leave in 2005 the company refused to investigate her complaints about Dunn.  The undisputed facts show that in 2004 she was confronted with the customer's allegations that she had been rude before she took medical leave and that then she took medical leave.  Because she took leave immediately after being confronted, the disciplinary report was written and presented to her when she returned.  Her second leave was for eight weeks beginning in late July 2005, and it was during that time that she first called the employee relations department of Advance America and complained about Dunn's having disclosed her medical condition to a co-worker sometime before April 5, 2005.  The undisputed evidence shows that the company did investigate her complaint, even though it took no action against Dunn.

More importantly, Ross points to no evidence relating her termination to the medical leave. It is undisputed that she continued to be employed at Advance America for approximately five months after she returned to work from her second medical leave.  She called the employee relations

department twice in December 2005 and once in February 2006 to complain about the fact that Dunn had not been disciplined for disclosing her medical condition, and she believes that she was terminated because of her complaints about that issue. There is some evidence to show that Fischer, who made the decision to terminate her, was exasperated that she first raised the complaint about Dunn's disclosure of her medical condition five months or more after the event occurred and after Dunn had already admitted his wrongdoing, and there is evidence to show that he was exasperated that she continued to complain as late as February 2006. There is further evidence to show that Ross's co-workers in the Blytheville center complained about her conduct in late 2005 and early 2006 and reported that she had threatened to get Dunn "nailed to the cross." Those events resulted in Fischer's visit to Blytheville for a meeting with Ross. It is undisputed that after Fischer read to Ross the statement that he had prepared as the reason for the employee counseling session, she left the meeting without having been excused by Fischer. After she left the meeting, Fischer fired her on the ground that she had been insubordinate. It may be, as will be discussed later, that Fischer's real motive was to retaliate against her for complaining about Dunn, but no reasonable jury could conclude from this sequence of events that the real reason Fischer decided to terminate Dunn was the fact that she had taken medical leave on two occasions.

For these reasons, Advance America's motion for summary judgment on Ross's FMLA claims is granted.

**B.  ROSS'S CLAIM OF DISABILITY UNDER THE ADA**

Ross has a disability, *i.e.*, bipolar disorder, and she contends that she was discharged because of her disability in violation of the Americans With Disabilities Act. Advance America argues that it is entitled to summary judgment on this claim for a number of reasons, one of which is that she

8

did not exhaust her administrative remedies.  "As with Title VII, the filing of a charge with the EEOC is a prerequisite to any private action under Title I of the ADA."  I EMPLOYMENT DISCRIMINATION LAW 981 (Barbara T. Lindemann, Paul Grossman, & C. Geoffrey Weirich eds., 4th ed. 2007) (citing 42 U.S.C. § 12117(a) (incorporating § 2000e-5)).

As noted above, Ross checked the boxes for "retaliation" and "other."  Moreover, she explained that her supervisor had discussed her personal medical information with co-workers and that after she complained she was discharged.  She said in the EEOC charge that she believed that she was retaliated against and that her medical records were discussed with co-workers in violation of the ADA and Title VII.

Ross argues that her EEOC charge was sufficient to encompass her present claim for disability because when the substance of a matter is stated in the EEOC charge the right to file is still preserved.  She relies upon *Duncan v. Delta Consolidated Industries, Inc.*, 371 F.3d 1020 (8th Cir. 2004).  In *Duncan*, the Eighth Circuit held that sexual harassment charges generally are not like or reasonably related to retaliation charges for complaining about antecedent harassment.  *Id*. at 1025. The Court cited with approval *Wallin v. Minn. Dep't of Corrs.*, 153 F.3d 681, 688 (8th Cir. 1998), for the proposition that retaliation claims are not reasonably related to underlying discrimination claims.  *Id*.  Likewise, the Eighth Circuit has held that race discrimination claims are separate and distinct from claims of retaliation.  *Id*. at 1026 (citing *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994)).

Here, Ross's present claim that Advance America discharged her because of her bipolar disorder is not substantially related to her charge of retaliation.  Her claim of retaliation is based upon her assertion that she was discharged for complaining about Dunn's disclosure of her medical

condition to a co-worker.  She said in her EEOC charge that she was complaining about the fact that her medical condition was discussed with a co-worker that she was discharged for complaining about that event, but she did not say anything to give notice that she was claiming that she was discharged because of her medical condition.

In her brief Ross argues in the alternative that Advance America failed to provide her a reasonable accommodation when she had an anxiety attack, but there is no mention in her EEOC charge about a claim that Advance America failed to provide her with a reasonable accommodation. Moreover, her amended complaint in this action never mentions a claim that Advance America failed to provide her with a reasonable accommodation.

In short, Ross's claim that she was discriminated against because of her disability is barred because she failed to exhaust her administrative remedies.  She did not check the box for disability in her EEOC charge, nor did she describe anything in her written remarks that would suggest that she was making a claim of discrimination based on disability.  She made a claim that Advance America retaliated against her for complaining about the disclosure of her medical condition, but her disability claim is not encompassed with that charge.  Therefore, summary judgment will be granted to Advance America on Ross's claim of disability discrimination under the ADA.

## C.   ROSS'S CLAIM OF RETALIATION UNDER THE ADA

To establish a claim for retaliation, Ross must establish (1) that she engaged in a protected activity; (2) that Advance America took or engaged in a materially adverse action; and (3) a causal connection existed between the protected activity and the materially adverse action.  *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007).  Ross contends that she engaged in protected activity when she protested the disclosure of her medical information.

10

Ross argues that the ADA requires that an employee's medical condition be treated as a confidential medical record, and in support of that argument she cites 42 U.S.C. § 12112(d)(4)(B) and *Cossette v. Minnesota Power & Light*, 188 F.3d 964, 968 (8th Cir. 1999). The section of the statute upon which she relies provides for voluntary medical examinations, including voluntary medical histories that are part of an employee health program available to employees at the work site, and it allows a covered entity to make inquiries into the ability of an employee to perform job-related functions. The next subsection, 42 U.S.C. § 12112(d)(4)(C) provides that information obtained under subparagraph (B) regarding the medical condition or history of an employee is subject to the confidentiality requirements of 42 U.S.C. § 12112(d)(3)(B) and (C). However, the medical information at issue in this case was not obtained under § 12112(d)(4)(B). Advance America did not conduct a voluntary medical examination in connection with an employee health program at the work site, nor did it inquire into Ross's ability to perform job-related functions. Dunn testified in his deposition that Ross called him one morning, said she was having some problems and needed a little bit of time to get on some medication because she had been diagnosed as being bipolar. In other words, she needed some time off due to her condition, and in requesting the time off she explained the medical condition for which she was being treated. The confidentiality provision of the ADA does not protect an employee's voluntary disclosure of a medical condition. *Ballard v. Healthsouth Corp.*, 147 F. Supp. 2d 529, 534-35 (N.D. Tex. 2001) (an employee is not entitled to the protection of the confidentiality provisions of the ADA when he voluntarily disclosed his HIV infection); *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 569 (N.D. Ohio 1987) (same).

However, Ross argues that she need not prove that the disclosure of her medical information was unlawful, only that she opposed a practice that she reasonably and in good faith believed to be

unlawful.  *See Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1155 (8th Cir. 1999).  Still, Ross has not testified or offered any evidence to show that she believed that Dunn's disclosure of her disorder to a co-worker violated the ADA.  It is undisputed that Ross told Dunn about her disorder because she needed time off and he needed to make scheduling arrangements.  If an employee requests time off and discloses to the employer a medical condition that necessitates the time off, there is nothing in the ADA that requires, or could reasonably be read to require, that the employer keep that information secret from other employees.  It is an ordinary, everyday occurrence in the workplace for an employee to request time off due to a medical condition, and for the employer's supervisor to disclose to other employees the reason for that employee's absence.  An employee may take leave due to influenza, a stomach virus, a broken leg, cancer, congestive heart failure, or some other medical condition and inform the employer of that medical condition; and when that happens it is common for the information to be spread around the workplace.  Nothing in the statute or the cases gives reason to believe that the ADA prohibits that kind of disclosure, nor, as noted, has Ross testified that she believed that the ADA prohibited that kind of disclosure.

The circumstances here are somewhat different inasmuch as Ross had a mental condition – bipolar disorder – instead of a physical illness such as influenza, a stomach virus, a broken leg, cancer, or congestive heart failure – so an employee like Ross may feel a sensitivity about the disclosure of that information that an employee with a physical illness would not feel. Representatives of Advance America, including Dunn, have testified that he should not have disclosed to other co-workers Ross's bipolar disorder, which is an indication that they feel, as most people would, that the disclosure of a mental illness is a more sensitive matter than disclosure of a physical illness.  Nevertheless, there is no distinction between physical and mental illness under the

ADA confidentiality requirements, and Ross has offered no basis either for a claim that she believed that there was such a distinction or that it would be reasonable to believe that there was such a distinction.  Dunn's disclosure was ill-mannered, and everyone agrees on that.  But he did not act illegally; Ross has not testified that she believed he had acted illegally; and there is no reasonable basis for believing that he acted illegally.

For these reasons, summary judgment is granted to Advance America on Ross's claim of retaliation under the ADA.

## C.      STATE LAW CLAIMS

Ross's federal claims have been dismissed.  If the district court dismisses all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over state-law claims.  28 U.S.C. § 1367(c)(3).  Out of deference and respect for the courts of the State of Arkansas, this Court will exercise its discretion to decline to exercise supplemental jurisdiction with respect to Ross's state-law claims.  *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 220 (8th Cir. 1990) (stating that, after dismissing the federal claims, the district court should have exercised its discretion to decline pendent jurisdiction because of "the necessity to provide great deference and comity to state court forums to decide issues involving state law questions"); *Roeben v. BG Excelsior Ltd. P'ship*, No. 4:06CV01643, 2008 WL 54916, at *3 (E.D. Ark. Jan. 3, 2008).

## CONCLUSION

For the reasons stated above, summary judgment is granted to Advance America on Ross's claims under the Family Medical Leave Act, Title VII, and the Americans With Disabilities Act. Document #34.  Ross also agrees that she has no claims under Title VII in addition to her claims related to disability and retaliation arising under the ADA, so those claims are dismissed as well.

Ross's claims that arise under the laws of the State of Arkansas are dismissed without prejudice.

Defendants' motion to strike affidavits is denied as moot.  Document #44.

IT IS SO ORDERED this 24th day of March, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE